**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JANE McMILLAN, ) | |
|     Plaintiff, ) | |
| ) | CIVIL ACTION FILE |
| ) | NO.:_____ |
| v. ) | **1 04-CV 3039** |
| ) | |
| DEKALB COUNTY, GEORGIA; VERNON ) | |
| JONES; MARILYN BOYD DREW; ) | |
| MORRIS WILLIAMS; RICHARD ) | **BBM** |
| STOGNER; and JOE STONE,  in their ) | |
| individual and official capacities, ) | |
| ) | **JURY TRIAL** |
| ) | **DEMANDED** |
|     Defendants. ) | |

## COMPLAINT

COMES NOW, JANE McMILLIAN, (hereinafter "Plaintiff") and files this

Complaint against Defendants DeKalb County, Georgia, Vernon Jones, Marilyn

Boyd Drew, Morris Williams, Richard Stogner, and Joe Stone, in their individual

and official capacities, to redress intentional race discrimination and other civil

rights violations pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1986, seeking

remedies for a conspiracy to discriminate against Plaintiff and a failure to prevent a

conspiracy against Plaintiff on the basis of her race.

-1-

## PARTIES

1.

Plaintiff is a citizen of the United States, a resident of Georgia, and was, at all times relevant, employed by DeKalb County as a manager in the Parks & Recreation Department.

2.

Defendant DeKalb County, Georgia is a political subdivision of the State of Georgia with the capacity to sue and be sued. The County may be served with the Summons and Complaint by personal service upon its Chief Executive Officer, Vernon E. Jones, at his business address of 1300 Commerce Drive, Decatur, Georgia 30031.

3.

Defendant Vernon Jones ("Jones"), an African-American, is the Chief Executive Officer of DeKalb County, who at all relevant times was acting under color of law. Jones is sued in his individual and official capacities. Service of process may be made upon Jones at his office listed above.

4.

Defendant Marilyn Boyd Drew ("Drew"), an African-American, is employed

-2-

by DeKalb County as Director of the County Parks and Recreation Department ("Parks and Recreation Department"). At all relevant times, Defendant Drew was acting under color of law. Drew is sued in her individual capacity and official capacity. Service of process may be made upon Defendant Drew in the Government Administration Office, 2nd Floor, Maloof Building, 1300 Commerce Drive, Decatur, Georgia 30030.

5.

Defendant Morris Williams ("Williams"), an African-American, is employed by DeKalb County as Assistant County Administrator. At all relevant times, Defendant Williams was acting under color of law. Williams is sued in his individual capacity and official capacity. Service of process may be made upon Defendant Williams at the Maloof Building, Sixth Floor, Government Administration, 1300 Commerce Drive, Decatur, Georgia 30030.

6.

Defendant Joe Stone ("Stone"), an African-American, is employed by DeKalb County as Director of Human Resources. At all relevant times, Defendant Stone was acting under color of law. Stone is sued in his individual capacity and official capacity. Service of process may be made upon Defendant Stone at his

-3-

place of business, Maloof Building, First Floor, Government Administration, 1300 Commerce Drive, Decatur, Georgia 30030.

7.

Defendant Richard Stogner ("Stogner") is white and is employed by DeKalb County as Executive Assistant to the Chief Executive Officer. At all times, Defendant Stogner was acting under color of law. Stogner is sued in his individual capacity and in his official capacity. Service of process may be made upon Defendant Stogner at his place of business, Maloof Building, Sixth Floor, Government Administration, 1300 Commerce Drive, Decatur, Georgia 30030.

8.

Upon information and belief, each Defendant resides in DeKalb County, Georgia.

## **JURISDICTION**

9.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

-4-

## VENUE

10.

Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

11.

Defendant Jones took office as DeKalb County's Chief Executive Officer ("DeKalb County CEO") on January 1, 2001.

12.

From January 1, 2001, through the present, Defendants Jones, Williams, Stone, Stogner, and Drew conspired to remove upper level white managers in the Parks and Recreation Department from their jobs on the basis of their race.

13.

Defendants' actions to remove upper level white managers from these jobs constituted a policy, practice, or procedure of the DeKalb County Parks and Recreation Department and of the office of the DeKalb County CEO.

14.

Defendants Jones, Williams, Drew and Stone stated that they wanted to have a "darker administration" to reflect "the new DeKalb County," meaning that they

-5-

wanted the management of DeKalb County to have fewer white managers.

15.

Plaintiff McMillan, a Caucasian female, was employed by DeKalb County

from February 1, 1973, until Marilyn Drew terminated her on April 29, 2004.

16.

Plaintiff's most recent position was Recreation Program Manager for the

DeKalb County Parks and Recreation Department.

17.

As Recreation Program Manager, Plaintiff reported to Defendant Drew in

2001 and 2002 until Drew was appointed by Vernon Jones as the Director of the

Parks and Recreation Department.

18.

Following Defendant Drew's promotion in 2002, Plaintiff reported directly to

Michael Bryant, Deputy Director of Revenue Management and Support Services

for the DeKalb County Parks and Recreation Department, who in turn reported to

the Director of Parks and Recreation, Defendant Drew.

19.

Throughout her twenty-one year employment with DeKalb County, Plaintiff

-6-

consistently received outstanding performance evaluations.

20.

Defendant Drew consistently treated Plaintiff and other white employees less favorably than similarly situated black employees.

21.

In 2001 and 2002, Defendant Drew, Plaintiff's immediate supervisor, refused to perform Plaintiff's mandatory annual performance evaluations, though she performed timely evaluations for similarly situated African-American employees, including but not limited to Makita Johnson and Jacqueline Swain.

22.

Throughout 2001 and 2002, Plaintiff repeatedly asked Defendant Drew to perform her evaluations because Plaintiff's excellent performance would have entitled her to merit pay increase each year.

23.

In 2003, Plaintiff's immediate supervisor, Michael Bryant performed Plaintiff's mandatory annual performance evaluations, but Defendant Drew refused to approve it.

-7-

24.

Throughout 2001, 2002, and 2003, Plaintiff and other white employees of the

Parks and Recreation Department who reported to Defendant Drew, including Sue

Grable and Michael Bryant, did not receive annual performance evaluations, or if

Defendant Drew finally approved a white employee's evaluations, it was not done

timely and prevented each of those white employees from receiving merit pay

increases which they otherwise would have earned.

25.

In 2003, Plaintiff and Michael Bryant repeatedly requested that Defendant

Drew approve Plaintiff's evaluation's because Plaintiff's excellent performance, as

shown on the evaluation, would have entitled Plaintiff to a merit pay increase.

26.

Defendant Drew's refusal to perform or approve Plaintiff's evaluations in

2001, 2002, and 2003 prevented her from receiving merit pay increases which

amounted to substantial amounts of money and significantly affected her pension

benefits.

27.

On May 28, 2002, DeKalb County Parks and Recreation employee Lisa

Glass, who was the Director of the Tucker Center, requested that one of the

Tucker Center employees, Stephanie Currier, be promoted to the position of

Assistant Program Coordinator with a pay increase from $6.53 per hour to $11.41

per hour.

28.

Lisa Glass made this request to Plaintiff, through Defendant Drew, who, at

the time, was the Director of Parks and Recreation.

29.

On June 27, 2002, Plaintiff confirmed through her immediate supervisor,

Michael Bryant, that the request to promote Stephanie Currier had been approved

and sent to payroll for processing.

30.

In August 2003, Plaintiff learned from an employee at the Briarwood Center,

that the Center's Director, Demetria Gray, was paying employees at differing rates

and requesting the overpaid employees to remit a portion of their paycheck back to

her.

31.

Plaintiff immediately informed her direct supervisor, Michael Bryant, of this

-9-

complaint and Bryant requested an audit of the payroll records at the Briarwood
Center.

32.

As a result of the audit, it was uncovered that employees in the Briarwood
Center had been paid more than authorized by the DeKalb County payroll records
and Director Demetria Gray knew of and authorized these pay increases.

33.

Defendant Drew, over the objections of Michael Byrant and Plaintiff,
suspended Demetria Gray and allowed her to resign her position.

34.

Defendant Drew, who was a personal friend of Demetria Gray, later
rescinded the resignation and allowed Gray to return to work, over the objections
of Plaintiff and Michael Bryant.

35.

Defendant Drew, who had hired Demetria Gray, expanded the audit to
encompass payroll in the entire Parks and Recreation Department in September
2003.

-10-

36.

The audit uncovered additional criminal activity by certain Parks and Recreation employees.

37.

As part of the audit, Stephanie Currier's pay rate was called into question.

38.

During the course of the audit, Defendant Drew informed DeKalb County Police investigating the criminal activity that Plaintiff was Stephanie Currier's supervisor and sought to have investigators question and arrest Plaintiff.

39.

Beginning in October 2003, Defendant Drew began repeatedly requesting Michael Bryant to discipline and terminate Plaintiff for allegedly giving Stephanie Currier a pay rate increase without approval.

40.

Michael Bryant refused to do so, stating that no evidence supported Defendant Drew's allegations.

41.

During the course of the audit and following criminal investigation, Plaintiff

-11-

was questioned by law enforcement officers in February 2004 relating to the increased pay rate for Stephanie Currier.

42.

Upon information and belief, Drew identified Plaintiff to law enforcement personnel as suspected of wrongdoing.

43.

Plaintiff truthfully explained to the officers that she had received approval from her supervisor for the pay rate increase.

44.

No criminal charges were ever brought against Plaintiff.

45.

In April 2004, four employees of the DeKalb County Parks and Recreation Department, including Demetria Gray, were arrested in connection with pay rate discrepancies and charged with theft by taking.

46.

On April 29, 2004, Drew terminated Plaintiff for allegedly allowing Stephanie Currier to receive a pay increase in May 2002 without approval, in spite of the fact that there was no evidence of wrongdoing.

47.

When Drew terminated Plaintiff, she knew that Plaintiff had obtained proper approval for Ms. Currier's pay increase.

48.

On May 3, 2004, Plaintiff's immediate supervisor, Michael Bryant, informed Drew and others that he had not been consulted regarding Plaintiff's termination and would have advised Drew that Plaintiff had, in fact, received written approval for Ms. Currier's pay rate increase.

49.

Michael Bryant also informed Drew that since approval for pay increases had to come from the Director of Parks and Recreation, and Drew had been in possession of the pay increase paperwork, Defendant Drew should have known of the pay increase and approval.

50.

During the payroll audit, Drew learned that Jacqueline Swain, a similarly situated African-American colleague of Plaintiff's, had sought and received approval for a pay increase for two of her subordinates, Adrian Baker and Joseph E. Marler, in a manner that was identical to the request made by Plaintiff.

-13-

51.

Jacqueline Swain's subordinates, Adrian Baker and Joseph E. Marler, were both part time employees and similarly situated to Plaintiff's subordinate Stephanie Currier.

52.

Drew did not discipline or terminate Jacqueline Swain, as she had Plaintiff for identical payroll discrepancies.

53.

Since Plaintiff's termination in April 2004, Defendant Drew has promoted Jacqueline Swain and made her the assistant to the Director of Parks and Recreation.

54.

In accordance with Defendant Jones's instructions to hire more black managers, Drew hired Clarence King, a black male to replace Plaintiff.

## COUNT I

## Violations of 42 U.S.C. § 1983

55.

Plaintiff reincorporates  the allegations contained in paragraphs 1-54.

56.

The Equal Protection Clause of the Fourteenth Amendment prohibits discrimination against public employees on the basis of race.

57.

At all times relevant to this Complaint, Defendants were acting under the color of state law.

58.

Defendants intentionally discriminated and conspired to intentionally discriminate against Plaintiff in the terms and conditions of her employment on the basis of her race.

59.

According to the audit, one of Jacqueline Swain's subordinate employees was being paid more than was authorized by the County.

60.

Drew took no action against Jacqueline Swain, as a result of his error.

61.

Defendants actions violated the Equal Protection Clause of the Fourteenth Amendment.

62.

Defendants' intentional racial discrimination and conspiracy to discriminate has proximately caused Plaintiff to suffer economic harm and other damages in an amount to be determined at trial.

63.

The individual Defendants acted with malice and reckless indifference to Plaintiff's federally protected rights and punitive damages should be assessed against them.

## COUNT II

## Violations of 42 U.S.C. § 1981

64.

Plaintiff incorporates  the allegations contained in paragraphs 1-63.

65.

Defendants intentionally discriminated against Plaintiff in the terms and conditions of her employment based on race.

66.

Defendants treated Plaintiff disparately from other employees on the basis of her race and created a racially-hostile work environment, both of which constitute a

-16-

continuing violation of 42 U.S.C. § 1981, as enforced by 42 U.S.C. § 1983, in violation of Plaintiff's federally protected rights.

67.

Defendants' intentional race discrimination has proximately caused Plaintiff to suffer economic and other damages in an amount to be determined at trial.

68.

The individual defendants acted with malice and reckless indifference to Plaintiff's federally protected rights, for which punitive damages should be assessed against Defendants.

## **COUNT III**

### **Violations of 42 U.S.C. § 1985**

69.

Plaintiff incorporates the allegations contained in paragraphs 1-68.

70.

Defendants conspired for the purpose of depriving Plaintiff and other white employees of the DeKalb County Parks and Recreation Department of equal protection of the laws, and to deprive Plaintiff of equal privileges under the laws through their plan to intentionally discriminate against white employees such as

-17-

Plaintiff, on account of their race.

71.

Two or more Defendants agreed to directly or indirectly deprive Plaintiff of her equal protection and privileges under the law because of her race, including the denial of benefits given to similarly situated black employees and her pretextual termination.

72.

Defendants acted in furtherance of the object of their conspiracy by taking steps to intentionally discriminate against Plaintiff on the basis of her race.

73.

Defendants' acts in furtherance of their conspiracy caused Plaintiff to suffer economic damages and other injuries for which she is entitled to recover.

74.

Defendants acted with malice and reckless indifference to Plaintiff's federally protected rights, for which punitive damages should be assessed against Defendants.

## COUNT IV

## Neglect and Refusal to Prevent Conspiracy to Violate Plaintiffs' Civil Rights Under 42 U.S.C. §1986

75.

Plaintiffs incorporate the allegations contained in paragraphs 1-74.

76.

Defendants each had a duty to prevent illegal race discrimination.

77.

Beginning on or before January 1, 2001, and continuing until April 29, 2004, all of the above-named Defendants neglected and refused to prevent a conspiracy aimed at mistreating, terminating and attempting to terminate certain Caucasian employees, including, but not limited to, Plaintiff Jane Macmillan, on account of their race by whatever means, legal or illegal, available to them.

78.

Defendants neglected or refused to prevent a conspiracy that included denying white employees, including Plaintiff, approval for merit pay increases.

79.

As a further part of this neglect and refusal, Defendants did not prevent

-19-

Plaintiff's termination and unequal treatment because of her race.

80.

In doing the acts alleged, each of the above-named Defendants acted within the course and scope of their respective agencies and in furtherance of the above-described conspiracy to terminate and otherwise treat unequally white employees, including Plaintiff in violation of 42 U.S.C. §1986.

81.

Defendants neglected and refused to prevent a conspiracy in violation of 42 U.S.C. §1986, with the intent to injure the Plaintiffs and to deny the Plaintiffs the right of equal protection of the laws, within the meaning of 42 U.S.C. §§1985(2) and (3).

82.

As a direct and proximate result of the above-described unlawful conduct, Plaintiff was unable to attend to their usual occupations with the resulting loss in compensation in an amount not yet ascertained.

**WHEREFORE**, Plaintiffs prays that this Court:

(A)     Declare that Defendants' actions, policies and practices complained of herein violate Plaintiff's federally protected rights as alleged;

(B)     Award Plaintiff compensatory damages against DeKalb County and

compensatory and punitive damages against the individual Defendants

for their intentional race discrimination and other civil rights violations

against Plaintiff;

(C)     Award Plaintiff's attorneys' fees and costs pursuant to 42 U.S.C. §

1988;

(D)     Reinstate Plaintiff to her former position;

(E)     Grant Plaintiff a trial by jury on all her claims.

(F)     Award Plaintiffs any additional relief that this Court deems so

appropriate.

Dated:  October 18, 2004.

A. Lee Parks
State Bar No. 563750
Andrew Y. Coffman
Georgia Bar No. 173115
Jonathan D. Loegel
State Bar. No. 755706

Parks, Chesin, & Walbert, P.C.
75 Fourteenth Street, 26th Floor
Atlanta, GA 30309
Telephone:  (404) 873-8000
Facsimile:   (404) 873-8050
Email:          acoffman@pcwlawfirm.com

-21-